# LAW OFFICES OF DON BUCHWALD

**101 PARK AVENUE - 27TH FLOOR**
**NEW YORK NY 10178**

TELEPHONE:
(212) 661-0040

EMAIL:
DONBUCHWALD@DONBUCHWALDLAW.COM

FACSIMILE:
(212) 808-7897

June 16, 2014

**VIA ECF**

Honorable Edgardo Ramos
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square, Courtroom 619
New York, NY 10007

    Re: *U.S. v. Christian, et al*, S3 12 Cr. 626 (ER);
       Our Client: Glenn Thomas, a/k/a Gucci

Dear Judge Ramos:

  Defendant Glenn Thomas ("Thomas"), by and through his undersigned counsel hereby moves *in limine* to exclude at trial Kevin Burden's July 9, 2012, self-exculpatory, narrative statements regarding events that allegedly occurred nearly 19 months earlier on the grounds that those statements are inadmissible hearsay that do not qualify for any hearsay exception. On June 12, 2014, co-defendant Tyrell Whitaker, a/k/a Bow Wow, moved to exclude the Mallory/Burden tapes from the forthcoming trial which is scheduled to commence on August 4, 2014 (ECF Document #122). We respectfully join in all aspects of that motion and now move, in our own right on behalf of Glenn Thomas, to exclude the Mallory/Burden tapes from the trial.[1]

## Background

  The six-count Indictment charges the defendants Raymond Christian, James Williams, Tyrell Whitaker and Glenn Thomas with various federal offenses in connection with the December 15, 2010 death of Jeffrey Henry, a/k/a "Joker."

  On July 9, 2012, nearly 19 months after Joker's death, a cooperating witness, Jamar Mallory ("CW"), with the FBI's assistance, set up a meeting with Kevin Burden ("Burden") in a

---

[1] Transcripts of the tapes are attached to the Whitaker motion and are incorporated herein by reference.

ZZBUCHWALD\DownL\3771.1

## LAW OFFICES OF DON BUCHWALD

Honorable Edgardo Ramos
June 16, 2014
Page Two

hotel room. A video recording of CW's meeting with Burden shows the two men sitting together in a hotel room consuming large amounts of hard liquor and smoking marijuana. During the meeting, the CW, unprompted by Burden, repeatedly steered the conversation to the topic of the "Joker" incident. Throughout their conversation, both men repeatedly and emphatically denied having any involvement in Joker's death, denied being present at the time of his death, denied having any personal knowledge of how Joker was killed or by whom, and further denied having any advanced knowledge that anyone had ever planned to rob or kill Joker.

At one point during their meeting, the CW disclosed to Burden the individuals that he believed were involved, not based on personal knowledge, but based merely on his perception of certain circumstances surrounding the incident. Burden responded with a blank stare that indicated he had no independent knowledge of whether CW's speculation was accurate. Eventually, CW was able to convince Burden that certain individuals named in the indictment were involved in Joker's death. Burden then described, in narrative form, certain events that he allegedly remembered from both before and after Joker was killed. Some of the facts he remembered were based on conversations with another declarant, "Spongebob", who does not appear in the video.

### Argument

Burden's July 2012 statements fall squarely within the definition of hearsay under FRE 801(c), and should accordingly be excluded in their entirety under FRE 802. Under the Federal Rules of Evidence, hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial ... offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Hearsay evidence is generally inadmissible. Fed. R. Evid. 802.

The hearsay exclusion is premised on the understanding that out-of-court statements are inherently unreliable because they are subject to particular hazards. *United States v. Williamson*, 512 U.S. 594 (U.S. 1994). The Supreme Court described some of these hazards that require the exclusion of hearsay evidence as follows: the declarant might have been lying; the declarant might have misperceived the events described; the declarant might have had a faulty memory; the declarant's words might be misunderstood or taken out of context; and, most importantly, the opponent is not able to cross-examine the declarant regarding hearsay statements. *Id.*

Burden's July 2012 statements fall squarely within the definition of hearsay and are subject to each and every one of the hazards that the Supreme Court has identified as being associated with hearsay statements. Indeed, Burden's July 2012 statements were made out of court and at a time when Burden was both drunk and under the influence of marijuana, they were made 19 months after the events described at a time when the events were no longer fresh in the declarant's memory, the declarant described the events in vague and ambiguous terms using informal language, aliases, and street slang that are likely to be misinterpreted by a jury, and,

## LAW OFFICES OF DON BUCHWALD

Honorable Edgardo Ramos
June 16, 2014
Page Three


most importantly, the defendants will not have the opportunity to cross examine Burden regarding his July 2012 statements to gauge his credibility or to test the veracity of his statements. Accordingly, Burden's statements are presumptively inadmissible.

At the last status conference in this case, the government suggested that Burden's July 2012 statements are admissible under two exceptions to the hearsay Rule. First, the government suggested that Burden's July 2012 statements might be admitted as statements by a co-conspirator in furtherance of a conspiracy involving the defendants. Second, the government asserted that the statements fall into the hearsay exception for statements against the declarant's penal interests. For the following reasons, neither hearsay exception applies, and Burden's July 2012 statements should be excluded.

**Burden's July 2012 Statements Were Not Made In Furtherance of a Conspiracy**

Fed. R. Evid. 801(d)(2)(A) carves out a hearsay exception for statements by a co-conspirator made in furtherance and during the course of a conspiracy. To admit a statement under 801(d)(2)(E), the Court must find by a preponderance of the evidence: "(1) that there was a conspiracy, (2) that its members included the declarant and the party against whom the statement is offered, and (3) that the statement was made both (a) during the course of and (b) in furtherance of the conspiracy." *U.S. v. Saneaux*, 365 F. Supp. 2d 493, 497 (S.D.N.Y. 2005) (*quoting United States v. Tracy*, 12 F.3d 1186, 1196 (2d. Cir. 1993)).

Element (3)(a) of the co-conspirator exception imposes a temporal requirement. *U.S. v. Saneaux*, 365 F. Supp. 2d 493, 299 (S.D.N.Y. 2005). It excludes from the co-conspirator exception statements made after the cessation of the conspiracy. *Id.* Here, the government has offered no credible evidence that Thomas and Burden were ever involved in a conspiracy of any kind. Even if it could offer such evidence, however, any alleged conspiracy involving Thomas and Burden would have ended long before Burden's July 2012 statements.

In the Government's Omnibus Opposition to Defendants' Pretrial Motions, dated July 31, 2013, the government asserted that, at trial, it plans to prove that the defendants "conspired to commit, and committed, an armed robbery of individuals believed to possess narcotics, and in the course of the robbery conspiracy, attempted robbery and robbery, caused the death of Jeffrey Henry, a/k/a 'the Joker,' in Newburgh, New York, on December 15, 2010." Burden's July 2012 Statements occurred almost 19 months after Joker's death, and hence, long after any such conspiracy would have ended. Accordingly, Burden's July 2012 statements could not have been made in furtherance of that alleged conspiracy.

In a transparent attempt to overcome the obvious defects in its theory that Burden's July 2012 statements were made during the course of an alleged conspiracy involving the defendants, the government filed a superseding Indictment on December 18, 2013, in which it erroneously asserts that the defendants were involved in a drug conspiracy until in or about

LAW OFFICES OF DON BUCHWALD

Honorable Edgardo Ramos
June 16, 2014
Page Four

September 2012. The government, however, cannot carry its burden of establishing that any drug conspiracy involving the defendants and Burden existed at the time of Burden's July 2012 statements, particularly in light of the fact that Thomas was taken into federal custody on February 28, 2011 and has been incarcerated ever since. There is no evidence, much less proof, that Thomas was taking part in any drug conspiracy with Burden, from prison, during the time period from February 28, 2011 to September 2012.

Furthermore, even if there was a conspiracy involving Thomas and Burden in July 2012 – which there clearly was not – Burden's July 2012 statements were not made "in furtherance" of that conspiracy. To satisfy this element of the co-conspirator hearsay exception, the statements "must be such as to prompt the listener ... to respond in a way that promotes or facilitates the carrying out of a criminal activity." *U.S. v. Gigante*, 166 F.3d 75, 82 (2d Cir. 1999). Indeed, "[i]dle chatter does not meet the test; nor does a merely narrative description by one coconspirator of the acts of another." *U.S. v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1198 (2d. Cir. 1989). Burden's statements about events that had occurred 19 months earlier were not made in furtherance of any existing conspiracy and furthermore, were not made to "promote [CW] to respond in a way that promotes or facilitates the carryout out of a criminal activity." Burden's July 2012 statements were merely narrative, idle chatter, solicited and prompted by the CW at the direction of the FBI. Burden's statements to the CW served no purpose in connection with any alleged conspiracy, and accordingly, the statements do not qualify for the co-conspirator exception to the hearsay rules.

**Burden's Statements Were Not Statement Against Penal Interests**

The government has also erroneously suggested that Burden's July 2012 statements are admissible as statements against Burden's penal interests. Federal Rule of Evidence 804(c) provides a narrow exception to the hearsay rule for statements that, at the time of their making, "so far tended to subject the declarant to criminal liability that a reasonable person in the declarant's position would not have made the statement unless believing them to be true." *Williamson v. United States*, 512 U.S. 594, 599 (U.S. 1994). The exception is only available where the declarant is unavailable to testify at trial and it only applies to statements that are "supported by corroborating circumstances that clearly indicate [their] trustworthiness." Fed. R. Evid. 804(b)(3); 512 U.S. 594 (U.S. 1994). Thus, to satisfy the statement against interest exception, the proponent is required to demonstrate: "(1) that the declarant is unavailable as a witness; (2) that the statement is sufficiently reliable to warrant an inference that a reasonable man in [the declarant's] position would not have made the statement unless he believed it to be true, and (3) that corroborating circumstances clearly indicate the trustworthiness of the statement." *U.S. v. Katsougrakis*, 715 F.2d 769 (2d Cir. 1983). In addition, only statements made on personal knowledge are admissible under the statement against penal interest hearsay exception. Fed. R. Evid. 602; *United States v. Lang*, 626 F. Supp. 658, 662 (2d Cir. 1978) (statements inadmissible because "although the statements have some capacity to incriminate the declarant, they assert facts outside of his personal knowledge").

ZZBUCHWALD\DownL\3771.1

# LAW OFFICES OF DON BUCHWALD

Honorable Edgardo Ramos
June 16, 2014
Page Five

In *Williamson v. United States*, the Supreme Court explained that, even where the statement against interest exception applies, it only applies to the single declaration or remark that is individually self-inculpatory. "The fact that a person is making a broadly self-inculpatory confession does not make more credible the confession's non-self-inculpatory parts." *Williamson*, 512 U.S. at 599. "A district court may not just assume for purposes of Rule 804(b)(3) that a statement is self-inculpatory because it is part of a fuller confession, and this is especially true when the statement implicates someone else." *Id.* at 601. Thus, collateral statements, even ones that are neutral as to the declarant's interests, are excluded. *Id.*; *see also United States v. Jackson*, 335 F.3d 170, 179 (2d Cir. 2003) ("in *Williamson's* wake, we have repeatedly emphasized that each particular hearsay statement offered under Rule 804 (b)(3) must be separately parsed and must, itself, be self-inculpatory").

Burden's July 2012 statements were not self-inculpatory. Rather, most of Burden's statements were self-exculpatory, and the rest were neutral. Throughout Burden's conversation with CW, he repeatedly denied having any personal knowledge of any plans to rob Joker and he further denied having any involvement in Joker's death. Burden consistently, exculpatorily distanced himself from the entire Joker incident. Indeed, at one point in the video, Burden emphatically exclaimed, "We didn't have no knowledge!" of the Joker incident and declared that the incident was something that he "had nothing to do with." Burden also discussed learning of certain information for the first time second-hand from someone named "Spongebob." Such statements are inadmissible because they were not based on personal knowledge and, moreover, they constitute hearsay within hearsay.

The only statement by Burden during his entire conversation with CW that is even arguably against Burden's penal interests is his statement that, at some point, he gave a "skat" to CW. Burden, however, clearly did not believe that the statement was against his penal interests due to his repeated assertion that he "had no knowledge" of how his skat was going to be used. Furthermore, Burden's statement that he gave his "skat" to CW is uncorroborated and was immediately refuted by CW. Indeed, immediately after Burden claimed that he gave a skat to CW, CW immediately denied it and the men proceeded to argue over whether or not Burden indeed gave CW a skat.

Burden's July 2012 statements are also unreliable because he was drinking heavily at the time he made the statements, he was mixing alcohol with marijuana, and the statements took place nearly 19 months after the events described. Furthermore, CW, acting at the FBI's direction, suggested various facts to Burden that Burden reluctantly adopted even though he had no independent recollection of those facts. Burden's statements therefore have no corroboration and are inherently unreliable.

## LAW OFFICES OF DON BUCHWALD

Honorable Edgardo Ramos
June 16, 2014
Page Six

### Conclusion

      For the foregoing reasons, Defendant Glenn Thomas respectfully requests that this court exclude Kevin Burden's July 2012 statements at trial. The Mallory/Burden tapes are inadmissible and any statements by Mallory as to what Burden told him on July 9, 2012 should likewise be excluded as hearsay and violative of the Confrontation Clause of the United States Constitution.

                          Respectfully submitted,

                          Don D. Buchwald

cc:    AUSA Kan Nawaday
        AUSA Andrew Bauer
        All co-counsel
        (Via ECF)