**MICHAEL H. SPORN**

ATTORNEY AT LAW
299 BROADWAY
NEW YORK, NEW YORK 10007

TELEPHONE                                                                                              FACSIMILE
(212) 791-1200                                                                                       (212) 791-3047

February 11, 2016

Hon. Edgardo Ramos
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

Re:  <u>United States v. Glenn Thomas</u>
Ind. No. 12 Cr 626 (ER)

Dear Judge Ramos:

　　　This letter is respectfully submitted in connection with the sentencing proceeding
currently scheduled for February 25, 2016.  A jury found Mr. Thomas guilty of a Hobbs Act
robbery, and of a conspiracy to commit that robbery, in Counts 1 and 2 of the Indictment in
violation of 18 U.S.C. §1951.  The statutory penalty for this conduct includes a term of
imprisonment from anywhere between no time up to twenty (20) years.  The jury also found Mr.
Thomas guilty, pursuant to 18 U.S.C. §924(j), of causing the death of a person in the course of
using and carrying a firearm as charged in Count 4 of the Indictment.  That statute, much like
§1951, carries an even broader range of punishment up to life in prison.  And finally, the jury
found Mr. Thomas guilty of brandishing a firearm, as charged in Count 5 of the Indictment in
relation to the robbery charged in Count 2 in violation of 18 U.S.C. §924(C)(1)(A)(ii).  That
statute requires a consecutive term of imprisonment of seven (7) years.

　　　The jury also found Mr. Thomas not guilty in Count 3 charging a conspiracy to distribute
narcotics; and accordingly did not consider Count 6 charging use and carrying a firearm in
relation to that charged conspiracy.  And in an incongruous verdict, the jury also found Mr.
Thomas not guilty of discharging a firearm as charged in Count 5 during and in relation to the
robbery charged in Count 2 – even though it found, in Count 4, that his use and carry of a
firearm during the robbery caused the death of another person.[1]

　　　The significance of these somewhat paradoxical jury findings for sentencing purposes is
that the Court now is charged with the obligation to find a sentence "sufficient but not more
than necessary" that has an infinite range of no time to life in prison, or life in prison plus seven
(7) years.  The Probation Office Pre-Sentence Report (PSR) has recommended a sentence at the
absolute extreme end of the statutory range – that is to say, life in prison plus seven (7) years.

---

[1]　　The question naturally arises how a defendant who was not guilty of discharging a firearm could have
caused the death of another person with it.

Hon. Edgardo Ramos
February 11, 2016
Page - 2 -

The PSR recommendation, and a sentence that would follow it, represents nothing less than an abdication of responsibility to do the hard work of tailoring a punishment that actually fits the offense and the offender. Surely that work does not lead to the default conclusion that Glenn Thomas must spend the rest of his life in jail.

In our post-*Booker* era, courts ultimately have come to recognize that sentencing is, as it must be, an "individualized assessment," *United States v. Jones*, 531 F.3d 163, 170 (2d Cir. 2008) (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)); see also *Koon v. United States*, 518 U.S. 81, 98 (1996) ( "[E]very convicted person [must be considered] as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."); *United States v. Cavera*, 550 F.3d 180, 197 (2d Cir. 2008).

Courts turn to 18 U.S.C. §3553(a) to find the individualized factors that lead to a "reasonable" sentence. The sentencing guidelines are among those factors, but the guidelines are not what drive sentences generally, and certainly not this particular sentence. A guideline range of life in prison ignores the mandate of the sentencing statute to consider, among other factors, "the nature and circumstances of the offense and the history and characteristics of the defendant." An examination of both the nature and circumstances of the offense, and the history and characteristics of Mr. Thomas support a case, if not for leniency, then certainly something substantially less than the maximum allowed by law.

## The Nature and Circumstances of the Offense as a Sentencing Factor[2]

Your Honor presided over the trial of this case, heard the testimony, saw the evidence and listened to the arguments. By any measure, what happened that fateful night was not the way it was supposed to happen. This was a clumsy, botched attempt at a robbery of a drug stash house, inartfully hatched and executed by the inept and intellectually challenged. It went terribly, tragically wrong. Whoever set out that night in Newburgh to Chambers Street did not have murder in their hearts or on their minds. Stealing drugs, while bad enough, was the sole objective.

This may be of no moment to Jeffrey Henry who lost his life that night. There is no attempt here to marginalize the result whatever his background may have been. However it would seem to make a huge difference in finding a proportionate punishment to understand the degree of venality, or absence of it, behind the actions of the participants. This was not a case where robbers ever intended to shoot at anyone, to injure anyone or worse. If shots were fired, it was in a desperate effort to leave the premises. Mr. Henry was trying to prevent the participants from leaving. No one aimed a gun at him. Rather, the participants were trying to get out the door.

---

[2]    The discussion of the facts here is based on the jury's verdict, and is not intended to concede or compromise Mr. Thomas' appellate rights

Hon. Edgardo Ramos
February 11, 2016
Page - 3 -

The potential for violence should be a foreseeable consequence when people armed with a gun or guns appear on the scene to forcibly take something. There must be a punishment for failing to see that risk or for recklessly disregarding it – especially when the worst, albeit unintended, consequence comes to pass. But we respectfully submit that it is a far different punishment that might be required for someone who sets out in the evening with a loaded firearm with the intent and with the mental state of actually shooting another person. The lesser level of mental culpability here calls for a more calibrated, and lesser, punishment. There was no malice aforethought here. For Mr. Thomas to forfeit the rest of his natural life in prison in the circumstances of this case seems far over the top of what is "sufficient but not more than necessary"

### Mr. Thomas' History and Characteristics as a Sentencing Factor

The meaningful story of Glenn Thomas' life is almost as tragic as the life lost in this case. Mr. Henry's life ended. Glenn Thomas' life never really had a chance to begin. I am attaching to this sentencing letter, as Exhibit A, a report by Carmeta Albarus, a forensic social worker, that drills into the depths and details of the history and characteristics of the defendant.[3] It needs little embellishment from me. It is difficult reading, like a modern chapter in Dante's *Inferno*. Glenn Thomas has had every conceivable disadvantage.

Mr. Thomas' family history is a painfully familiar story re-rendered. His father was absent. His mother was an abused child herself physically and mentally. She has a psychiatric history. She was a child herself when her first child (of nine) was born. She endured a series of failed and abusive relationships. Mr. Thomas' mother never provided the nurturing and the stability that should be every child's right. She coped as best she could. At times that meant selling and using drugs herself among other indiscretions. Her children, including Glenn, essentially were left to fend for themselves.

Mr. Thomas never knew stable shelter, never had enough food to eat or clothes to wear during his childhood. Severe deprivation at every turn, in every facet of life is all that Glenn Thomas ever has known. There was no adult supervision. Living conditions at various times as described in the attachment are an American gothic horror story. At times he lived on the street or went to foster care because living conditions were so abominable. Predictably, he struggled in school, but there was no one to advocate for him in the system. His learning and cognitive deficits, apparent in testing then and in his speech now, were never addressed. Neither were his many other significant health issues.

The defendant is a product of his environment, as are we all. If it takes a village to raise a child, Glenn Thomas was in the wrong village. The rampant poverty infesting Newburgh includes widespread asbestos exposure and lead poisoning. There is little doubt that Mr. Thomas has been affected by long-term exposure. He mother never took him for testing although his

---

[3]     Copies will be delivered to chambers, but not filed electronically with the Court out of privacy concerns.

Hon. Edgardo Ramos
February 11, 2016
Page - 4 -

brother, living in the same environment, tested positive.  Researchers have long known that early exposure to lead impairs brain development and is strongly associated with later violent or criminal behavior.[4]

Lead poisoning was not all that the defendant was exposed to.  On the mean streets of Newburgh, he saw his best friend shot to death by the police when they were teenagers.  Trouble with the law soon followed.  Like his mother before him, Mr. Thomas went to the streets to sell drugs in order to survive.  He felt responsible to provide for younger siblings.  There was no one else to turn to for support.  It was his model.  It was the only avenue he knew.

To arrive at this moment in time and in this place is hardly surprising.  It would seem almost preordained.  Mr. Thomas, now 26 years of age, really never had a meaningful chance to know any other life.  Unfortunately his story is not unique.  His is a story of two Americas, a land of plenty that he has never known and a land of unthinkable deprivation and poverty.  His mother was never equipped emotionally, financially or any other way to take care of him.  He is society's child, and we have failed him, like so many others.  He is the product of abandonment on many levels.  Our answer to the devastation wrought in Newburgh is to remove its occupants and warehouse them in prisons.

However in the end Mr. Thomas cannot blame others or make excuses for what happened that night.  There is no getting around the idea that a robbery ending in someone's death must be met by a serious response.  We ask that the offense, with its circumstances, be balanced against Mr. Thomas' background.  And we respectfully suggest that a balanced response – a fair and just response – does not require a sentence of life in prison.  A collective sentence of twenty-five (25) years on all counts would be a significant and substantial sentence.  It would meet the PSR concern, in its "Justification" that "Thomas's behavior will see no improvements unless a lengthy custodial sentence is impose."  It would require Mr. Thomas to spend an extremely long time in prison.  But it would also give him some hope that he may someday earn his freedom.  It would leave him with an incentivized mindset during those long years instead of an attitude of hopelessness and despair.

### §3553(a)(2) Considerations

The public policy purposes in the sentencing statute, at §3553(a)(2), to impose a punishment that is "sufficient but not greater than necessary" would be satisfied by with a lengthy sentence of twenty-five (25) years.  It would reflect the seriousness of the offense.  It would be a just punishment in proportion to the offense, and in proportion to Mr. Thomas' history and characteristics.

The PSR recommendation of a life sentence is based essentially on the theory of general deterrence.  This justification ignores the overwhelming empirical evidence and research in the

---

[4]     *See* Nicholas Kristof, *New York Times*, February 7, 2016.

Hon. Edgardo Ramos
February 11, 2016
Page - 5 -

academic literature that has been recognized by prominent jurists and public officials in cases
and commentary. Among others, Justice Kennedy recently observed in testimony before
Congress that "this idea of total incarceration just isn't working, and it's not humane." In any
event twenty –five (25) years in prison is a severe sentence by any standard. It certainly
vindicates the policy objectives of the sentencing statute.

Although individual and general deterrence are codified policy objectives, there is simply
"no conclusive evidence that supports the hypothesis that harsher sentences reduce crime through
the mechanism of general deterrence."[5] Research has consistently established that
while the certainty of being caught and punished has a deterrent effect, "increases in severity of
punishments do not yield significant (if any) marginal deterrent effects."[6] In fact, "[t]hree
National Academy of Science panels … reached that conclusion, as has every major survey of
the evidence."[7]

One of the objectives of sentencing is to "promote respect for the law."[8] But unduly
harsh sentences breed disrespect for the law. "A sentence of imprisonment may work to promote
not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh
punishment without taking into account the real conduct and circumstances involved in
sentencing." *Gall v. United States*, 552 U.S. 38, 55 (2007). *See also United States v. Deegan*,
605 F.3d 625, 655 (Bright, J., dissenting) (harsh federal punishment compared to lenient state
sentencing for the same criminal activity "promotes disrespect for the law and the judicial
system."); *United States v. Stern*, 590 F. Supp.2d 945, 957 (N.D. Ohio 2008) ("Respect for the
law is promoted by punishments that are fair, however, not those that simply punish for
punishment's sake."). A life sentence is an overreaction. It invites derision; whereas a lengthy
sentence of twenty-five years, while severe, represents a judgment that the community can grasp.

Newburgh has long been a cesspool of violence. There is plenty of blame to go around,
but no easy answers. Sociology is complicated. Glenn Thomas, like some many young African-
Americans in Newburgh has been sucked into the vortex of violence there; and so he has become
part of the problem. There is a groundswell of recognition in the press, in the courts and in the
academic literature that a generation of African-American men is being disappeared. In *United
States v Bannister*, 786 F.Supp.2d 617, 651 (E.D.N.Y. 2011) Judge Weinstein observed that
"[e]xcessive incarceration has disproportionately affected African Americans." It is no answer
to simply consign the defendant forever to the prison warehouse.

---

[5]     *See* Anthony N. Doob & Cheryl Marie Webster, *Sentence Severity and Crime:  Accepting the Null
         Hypothesis*, 30 Crime & Just. 143, 187 (2003).
[6]     *See* Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime & Just. 1, 28 (2006).
[7]     *Id. See also* Zvi D. Gabbay, *Exploring the Limits of the Restorative Justice Paradigm:  Restorative Justice
         and White Collar Crime*, 8 Cardozo J. Conflict Resol. 421, 447-48 (2007)("[C]ertainty of punishment is
         empirically known to be a far better deterrent than its severity.").
[8]     *See* 18 U.S.C. §3553(a)(2)(A).

Hon. Edgardo Ramos
February 11, 2016
Page - 6 -

Instead Mr. Thomas is asking not to be consigned to the garbage heap; not to be warehoused for the rest of his life. He is a human being of value. He has had a hard road all his life. He knows there must be consequences for violating the law. He asks only for a reasonable punishment. We respectfully ask your Honor to take all these factors into account in fashioning a sentence that reflects compassion, fairness and justice.

Respectfully submitted,

Michael H. Sporn

MHS/ss
Cc:  Kan Nawaday, Esq.